IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DEBORAH K. ALBURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-04077-CV-C-NKL |
| ) | |
| JOHN Q. HAMMONS HOTELS ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Deborah K. Alburtis, the lone-remaining plaintiff and now acting pro se, sued Defendant John Q. Hammons Hotels Management, LLC, ("JQHH") for creating a hostile work environment in violation of Title VII. Defendant JQHH moves for summary judgment [Doc. # 38], asserting Alburtis has failed to make her prima facie claim for sexual harassment. Alburtis responds that there is no theory under which JQHH could not be held liable for the alleged hostile work environment. The Court now grants summary judgment for JQHH.

**I.     Facts**

In her two-page response, Alburtis failed to respond to JQHH's statement of undisputed material facts. Although she is proceeding pro se, Alburtis is required to comply with the federal rules of civil procedure, as this Court has already explained to her. *See Gieselman v. City of Desoto*, No. 07-1510, 2008 WL 163593, at *1 (E.D. Mo. Jan. 17, 2008)

1

("Plaintiff's pro se status cannot provide a shield for his gross failure to comply with the Federal Rules of Civil Procedure and this Court's previous order."); *United States v. Pospisil*, 127 F. Supp. 2d 1059, 1062 (W.D. Mo. 2000) ("[*P*]*ro se* status is no excuse for failure to comply with the federal rules or court orders." (citing *Ackra Direct Mktg. Corp.* v. *Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th Cir. 1996))). Because of Alburtis's failure to comply with the federal and local rules, the court deems Defendant's statement of facts admitted. *See* Local Rule 56.1(a).

JQHH owns the Capitol Plaza Hotel and Convention Center, located in Jefferson City, Missouri. The hotel is supervised by a General Manager and is run on a day-to-day basis by Department Managers. Additionally, the hotel has a full-time, on-site human resources professional, who reports to the General Manager, and a Corporate Human Resources Department located in Springfield, Missouri. During the relevant period of this case, Brian Allen was the General Manager and Jonni Smith was the Human Resources Manager.

Starting on April 21, 2005, Plaintiff Alburtis was employed as Lead Dining Room Hostess/Cashier. Her essential job duties included scheduling dining reservations, greeting and escorting guests to tables, providing menus and responding to complaints as directed by her supervisor. Prior to beginning her job, she went through an orientation, where she received a copy of the JQHH Associate Handbook ("Associate Handbook") and copies of various company policies. The policies included the Sexual Harassment Policy, the Employee Conduct Policy, the Attendance Policy and the Electronic Media Policy.

2

Under the Employee Conduct Policy, coercion, intimidation, threats, disrespectful and/or discourteous conduct among JQHH employees are prohibited. JQHH also has a sexual harassment policy in which it states that it takes sexual harassment very seriously and vigorously enforces the policy. The policy specifically defines and prohibits a hostile work environment. The policy also contains a provision regarding how to report sexual harassment, requiring employees to tell their supervisor (or, other alternative officers or managers if the employee does not wish to inform her or his supervisor) in writing. Once a complaint has been made, the sexual harassment policy states that JQHH will investigate the complaint as quickly as possible, including conducting any interviews as necessary. Alburtis acknowledged receiving this policy, as well as the Employee Conduct Policy, at the start of her employment. The sexual harassment policy is also set out in the Associate Handbook, which Alburtis also acknowledged receiving.

During the course of her employment, Alburtis allegedly made two sexual harassment complaints (on her own behalf) to Jonni Smith. The first complaint involved a bar manager who Alburtis had previously dated. According to Alburtis, after they were no longer dating, the bar manager made an inappropriate comment to her. In her deposition, Alburtis agrees that Smith took the incident seriously, and although she felt the bar manager had not been reprimanded, she was "content to leave it at we couldn't talk to each other." Although Smith told Alburtis to inform her if there were any further problems with the bar manager, Alburtis never did so. The second complaint involved a cook that commented on Alburtis's tattoo when she bent over to pick up something off the ground. Alburtis also claimed that the cook

looked like he was trying to look up her skirt. Despite this, Alburtis told Smith that she did not want to make a formal complaint, but simply wanted the cook to know she needed her personal space. Smith told Alburtis that she would speak with the cook, and to come straight to her if there were any more problems. Later that day, Smith met with the cook about the incident, and explained to him not to comment on anyone's personal appearance. She advised him to keep a professional attitude and only approach people when it concerns business. Alburtis did not make any further complaints to Smith about the cook.

On June 20, 2006, JQHH discharged Alburtis. JQHH contends the discharge had nothing to do with Alburtis's sexual harassment complaints, but was for failing to call in or show up for a scheduled shift on June 17, 2006, in violation of the company's employment policies. Previously, on June 5, 2006, JQHH placed Alburtis on Final Notice for improperly closing the hotel restaurant early on a Saturday night when it was three-quarters full, without consulting the manager on duty. JQHH explained to Alburtis that any further violations of company policy would result in her immediate termination. On June 17, 2006, Alburtis violated company policy by failing to call in or show up for her scheduled shift. Additionally, in the course of another investigation, JQHH learned Alburtis had secretly tape recorded conversations of other employees without their consent, which also violated company policy. Alburtis acknowledged this conduct. JQHH states these were the reasons for her termination.

**II.     Discussion**

    **A.     Summary Judgment Standard**

4

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).

**B.     Hostile Work Environment Claim**

To establish a hostile work environment claim, Alburtis must show that: (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment in the

5

workplace; (3) the harassment was based on sex (causal nexus); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *See Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 738 (8th Cir. 2005). "Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 549-50 (8th Cir. 2007)).

Alburtis has failed to make out her prima facie case of a hostile work environment. Viewing the record and drawing all reasonable inferences in favor of Alburtis, the Court finds the conduct Alburtis complains about does not rise to the level of severe or pervasive conduct necessary to establish her claim. In fact, the second incident was simply a comment about a tattoo and was not sexual in nature. *Id*. at 532 (noting most of plaintiff's complaints were non-sexual in nature). Under Eighth Circuit law, the two incidents cited by Alburtis cannot establish that the workplace was permeated with discriminatory conduct. *Id*. (holding that comments that plaintiff and another employee "used a 'strap on,'" and that plaintiff "had a large butt" were isolated comments and did not constitute hostile work environment); *see also LeGrand v. Area Resources for Cmty. & Human Servs.*, 394 F.3d 1098, 1102-03 (8th Cir.

6

2005) (holding that hostile work environment did not exist where defendant asked plaintiff to watch pornographic movies and "jerk off with him").

Moreover, even if the comment did rise to that level, JQHH took prompt and effective remedial action. On both occasions, Smith immediately spoke with the offenders and apprised them of the correct behavior to exhibit in the workplace. Alburtis never indicated that the offenders made additional comments after Smith spoke with them. Thus, Alburtis has not presented a genuine issue of material fact regarding JQHH's failure to take remedial action. *See Anda*, 517 F.3d at 532 ("Because the undisputed evidence shows that Wickes dealt with Anda's specific complaints about Carlson in a prompt and effective manner, Anda does not raise a material question of fact as to whether Wickes failed to take prompt and effective remedial action.").[1]

---

[1] Jennifer Graves, the dismissed plaintiff, requests that her cause be reinstated because it was her attorney's fault that discovery was not answered [Doc. # 46]. Although the Court dismissed her claim on October 15, 2007, Graves waited until March 17, 2007, to file this request, five months after her dismissal and a month and a half after JQHH filed its summary judgment motion. Graves has provided no justifications under Rule 60(b) to relieve her of the Court's final judgment.

7

In her response,[2] Alburtis did not respond directly to JQHH's motion, but instead listed a number of cases, most of which are from other circuits, for various propositions not at issue, such as whether Defendants can hide behind their sexual harassment policy, companies' vicarious liability for the acts of their employees, and the right of Defendants to seek personal and trivial information regarding Plaintiffs. These citations do not address the issues raised in JQHH's brief. To the extent that Alburtis's out-of-time response is considered, that response contains only conclusory statements and allegations unsupported by facts in the record. *See Garrett v. Albright,* No. 06-4137, 2008 WL 795613, at *3 (W.D. Mo. Mar. 21, 2008) (citing *Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004)). Additionally, the fact is, even if the Court were to accept as true the allegations contained in the out-of-time response, there are numerous Eighth Circuit cases that have held there was no hostile work environment in circumstances much more severe and outrageous than described here. *See, e.g., Vajdl*, 484 F.3d at 551 (coworkers' frequent inappropriate comments about plaintiff's body, incident where coworker touched plaintiff's hair, and coworkers' suggestions that they go on dates did not rise to level of hostile work environment); *Tuggle v. Mangan*, 348 F.3d 714, 722 (8th Cir. 2003) (holding that statements

---

[2]Although her response deadline was extended twice to March 17, 2008, Alburtis filed a second response, out of time, on April 4, 2008 [Doc. # 54]. In this response, Alburtis claims ignorance of the federal rules and now acts to correct her mistakes. However, she failed to request leave to file this supplemental reply as required under the federal and local rules. *See* Local Rule 56.1(c). Because of Alburtis's continued failure to follow the rules, the Court strikes her out-of-time response. In any event, her response still does not comport with Local Rule 56.1's requirement that "[e]ach fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed."

by manager that "women are better secretaries;" manager's inquiries as to why plaintiff did not wear make-up or dresses to work; manager's statement that plaintiff must choose between work and family after she requested time to pick up her son; manager's comments that plaintiff needed exercise; and photographs of plaintiff bending over posted on bulletin board did not constitute hostile work environment); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002) (holding that manager's sexual advances toward plaintiff, manager's requirement that plaintiff use his workstation with a screen saver depicting a naked woman, the manager's unnecessary touching of plaintiff's hand on four or five occasions, the sexually-suggestive planter in the manager's office, and the manager's display of a penis-shaped pacifier did rise to level of hostile work environment).

### C.    **Unauthorized Practice of Law**

Finally, the Court is obligated to note that Jennifer A. Graves is potentially engaging in the unauthorized practice of law. Although Alburtis's response is signed by her, immediately after her signature is the notation "BY: Jennifer A. Graves." *See* Doc. # 47. However, the Court dismissed Graves's claims with prejudice back on October 15, 2007, for failing to answer JQHH's discover requests. *See* Doc. # 25. Thus, she is no longer a party to this case. Under § 484.020.1, RSMo, "[n]o person shall engage in the practice of law . . . . unless he shall have been duly licensed thereof . . . ." *See also Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 338 (Mo. 2007). Violation of this statute is a misdemeanor. *See* § 484.020.2. There is no indication that Graves has a law license, and while Graves

9

certainly has a right to represent herself in this Court, she may not represent Alburtis in her claim. *See also* Local Rule 83.5 (rules regarding bar admissions).

**III.    Conclusion**

Accordingly, it is hereby

ORDERED that Defendant John Q. Hammons Hotels' Motion for Summary Judgment [Doc. # 38] is GRANTED. It is further

ORDERED that Jennifer A. Graves's Motion for Reinstatement [Doc. # 46] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: April 17, 2008  
Jefferson City, Missouri